IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IQVIA, INC. | : | CIVIL ACTION |
| | : | |
| v. | : | No. 22-2610 |
| | : | |
| ERICA BRESKIN, et al. | : | |

**MEMORANDUM**

**Chief Judge Juan R. Sánchez**                                                          **March 20, 2023**

Plaintiff IQVIA, Inc. brings this action against Defendants Erica Breskin and her current employer, Slipstream IT, LLC ("Slipstream"), claiming Breskin's unauthorized access of IQVIA's documents violated federal and state law. In its seven Count complaint, IQVIA brings claims against both Breskin and Slipstream for misappropriating trade secrets under the federal Defend Trade Secrets Act (Count I) and the Pennsylvania Uniform Trade Secrets Act (Count II), unjust enrichment (Count VI), and unfair competition (Count VII). IQVIA also asserts claims against Breskin for violation of the Computer Fraud and Abuse Act (Count III) and breach of contract (Count IV), and against Slipstream for tortious interference with contractual relationships (Count V). Slipstream has moved to dismiss all Counts against it, arguing the claims against it are entirely speculative. Breskin joined this motion, claiming Slipstream's arguments are applicable to her as well. Slipstream's motion to dismiss will be granted without prejudice as follows. The misappropriation claims will be dismissed for failure to sufficiently identify the trade secrets at issue. The tortious interference claim will be dismissed because IQVIA has not pled specific intent to harm with any underlying factual allegations. And because the unfair competition and unjust enrichment claims depend on the misappropriation and tortious interference claims, the former must also be dismissed. Breskin's joinder will be granted to the extent the misappropriation claims against her will be dismissed without prejudice. IQVIA will be granted leave to amend.

1

**BACKGROUND**

Plaintiff IQVIA, Inc. provides data, technology, analytics, consulting, and other business and clinical research services to the life sciences industry. Compl. ¶ 11, ECF No. 1. In the course of these activities, IQVIA generates and collects extensive client information, technical documentation, internal financial data, testing information, and other confidential, proprietary information. *Id.* ¶¶ 22, 27-30. IQVIA claims a competitor could use this information "to determine IQVIA's clients, its marketplace strategies, and pricing information . . . in an effort to solicit clients away from IQVIA." *Id.* ¶ 34. For this reason, IQVIA takes numerous measures to keep its information confidential, including "the use of agreements containing confidentiality, non-solicitation, and non-competition restrictions, password protected computer systems, limited access to information within IQVIA where appropriate, [and] limited access to IQVIA's facilities." *Id.* ¶ 31. IQVIA also locks the USB ports on employees' company laptops to prevent unauthorized data downloads. *Id.* ¶ 66. Employees who have a legitimate need must ask IQVIA to unlock their USB port in writing. *Id.* ¶ 67.

In October 2017, IQVIA acquired HighPoint Solutions, LLC ("HighPoint"). *Id.* ¶ 37. As part of the acquisition, Defendant Erica Breskin joined IQVIA as an employee. *Id.* ¶ 45. The Non-Disclosure and Inventions Agreement ("NDA") and Non-Interference Agreement ("NIA") she had signed with HighPoint were transferred to IQVIA under a successors clause. *Id.* ¶¶ 49, 54, 56-57; HighPoint NDA ¶ 5.3, ECF No. 1-1 at 3. Pursuant to the NDA, Breskin agreed to "maintain in strict confidence all Proprietary Information" and to not "use or disclose the same other than for the benefit of Company in the performance of my duties as an employee." HighPoint NDA ¶ 3, ECF No. 1-1 at 2. She also agreed she would not "copy, reproduce or remove from Company's premises, any memoranda, notes, [etc.]." *Id.* ¶ 4. The NDA further stated: "[a]ll Material is and

2

shall remain the sole property of Company and all originals and copies thereof shall be delivered to Company upon Company's request and, in any event, termination of employment for whatever reason." *Id.*

The events giving rise to this case flow from Breskin's actions in the period between December 2021, her last month of employment with IQVIA, and March 2022. On December 10, 2021, Breskin requested permission to download personal files saved on her IQVIA laptop to an external hard drive. Compl. ¶ 65, ECF No. 1. IQVIA granted permission and unlocked her USB port for this purpose. *Id.* ¶ 68. Then, on December 14, 2021, Breskin gave two weeks' notice of her resignation. *Id.* ¶ 69. During her exit interview, Breskin said she was leaving to join Defendant Slipstream. *Id.* ¶ 70. Slipstream was founded by former HighPoint and IQVIA employee Brandon McKay and provides "information management products and services to many of the same customers as IQVIA." *Id.* ¶¶ 45, 58-59.

Breskin's employment with IQVIA ended on December 28, 2021. *Id.* ¶ 69. Pursuant to company policy, she was required to return her company laptop and cell phone within two business days. *Id.* ¶ 83. IQVIA provided return instructions in late December 2021 and again on January 6, 2022. *Id.* ¶¶ 84, 86. However, Breskin did not return her laptop at that time. *Id.* ¶ 87. On or about January 19, 2022, IQVIA discovered Breskin had accessed its internal document management platform, Smartsheet, after her employment ended. *Id.* ¶ 73. Upon review, Smartsheet's records showed Breskin logged in on December 29, 2021, December 30, 2021, January 10, 2022, January 11, 2022, and January 18, 2022. *Id.* ¶ 76. On these dates she viewed, edited, printed, and downloaded nine files. *Id.* ¶ 78.

Following this discovery, IQVIA began investigating Breskin's pre-departure activity. *Id.* ¶ 88. It discovered she had downloaded files to an external hard drive and emailed others to her

personal email account. *Id.* ¶ 89. IQVIA's counsel sent a cease-and-desist letter on February 23, 2022, and again asked Breskin to return her laptop and other equipment. *Id.* ¶ 90. Breskin responded through counsel and returned her laptop and a hard drive she had used to store downloaded information. *Id.* ¶¶ 91-92. She also submitted a Verified Statement. *Id.* ¶ 81.

In this statement, Breskin said that when she downloaded her personal files, "[t]here were also some IQVIA forms that I had used in the past that may have been downloaded onto the USB, but I do not recall which ones and . . . I have not accessed the USB drive since that time." Verified Statement Erica Breskin ¶ 3, ECF No. 1-1 at 8. She also claimed the Smartsheet logins were accidental because both IQVIA and Slipstream use the platform and her browser auto-loaded her IQVIA credentials: "[a]t the time of log-in, I assumed that IQVIA would have disabled my password and did not pay attention to the log-in until the system had loaded." *Id.* ¶¶ 5-6. She did admit to two separate "incidents" where she downloaded IQVIA forms to her Slipstream laptop. *Id.* ¶ 7. Breskin subsequently self-reported to Slipstream, received verbal and written warnings, and was required to take courses on intellectual property rights. *Id.* ¶¶ 8-9. Breskin also claimed Slipstream deleted the files from her laptop and its system.[1] *Id.* ¶ 8. Finally, Breskin said she does not possess hard copies of any IQVIA information besides her offer letter and copies of performance reviews, does not have IQVIA business documents in her personal email, and has not used or disclosed any of IQVIA's information since her departure. *Id.* ¶¶ 11-13.

---

[1] For the purpose of deciding the motion to dismiss, the Court may only consider Breskin's statement. *Mayer v. Belichick,* 605 F.3d 223, 230 (3d Cir. 2010) ("In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."). Thus, it may not consider the Declaration by Brandon McKay, despite its inclusion of additional details regarding the deletion, that Slipstream submitted with its Response in Opposition to IQVIA's Motion for Preliminary Injunction. Decl. Brandon McKay, ECF No. 20-2.

After receiving the laptop and hard drive, IQVIA conducted a forensic examination of both machines. Compl. ¶ 93, ECF No. 1. This examination showed Breskin downloaded nearly 10,000 files on the hard drive. *Id.* ¶ 95. It also showed she had plugged a second hard drive into the laptop on December 2, 2021. *Id.* ¶ 101. As a result, IQVIA's counsel again contacted Breskin's counsel, and she turned over the second drive. *Id.* ¶¶ 103-04. Examination revealed Breskin had downloaded proprietary information to it as well. *Id.* ¶ 105.

In addition to investigating Breskin's activities, IQVIA's counsel wrote to Slipstream on March 29, 2022, requesting Slipstream's cooperation in confirming IQVIA's information was no longer on Breskin's employee laptop. *Id.* ¶ 120. On April 21, 2022, Slipstream responded through counsel. *Id.* ¶ 121. Slipstream indicated IQVIA's information was destroyed but refused to provide Breskin's company laptop for examination. *Id.* ¶¶ 121-22.

IQVIA filed the complaint, a motion for preliminary injunction, and a motion to expedite discovery on July 5, 2022. Breskin filed her answer on August 8, 2022, and responses to the motions were all filed by August 18, 2022. Slipstream also filed a motion to dismiss on August 25, 2022, and Breskin filed a joinder in support on September 2, 2022. The Court heard oral arguments on February 21, 2023. All motions are now ripe for review.[2]

**STANDARD OF REVIEW**

To withstand a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the facts pled "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. However, "[t]hreadbare recitals of the

---

[2] The other two motions will be dealt with by separate Orders.

5

elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. Rather, the complaint must show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* In evaluating a Rule 12(b)(6) motion, a district court must separate the legal and factual matter elements of the plaintiff's claims. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). The court assumes the truth of all well-pleaded factual allegations and reasonable inferences therefrom, construes both "in a light most favorable to the [plaintiff,]" and "determine[s] whether they 'plausibly give rise to an entitlement to relief.'" *Oakwood Labs., LLC v. Thanoo*, 999 F.3d 892, 904 (quoting *Iqbal*, 556 U.S. at 679).

**DISCUSSION**

Slipstream has moved to dismiss all five claims against it: misappropriation of trade secrets under federal and state law, tortious interference with contractual relationships, unjust enrichment, and unfair competition. Slipstream argues IQVIA's allegations "consist entirely of conclusory statements, formulaic recitations, and speculation[.]" Def. Slipstream's Br. Supp. Mot. Dismiss 2, ECF 27-2. Breskin filed a joinder in support of the motion. Def. Breskin's Joinder Supp., ECF No. 28. As to Slipstream's motion, Counts I and II, misappropriation of trade secrets, will be dismissed for failure to sufficiently identify the alleged trade secrets. Count VI, tortious interference, will be dismissed because IQVIA has not adequately pled an intent to harm on the part of Slipstream. And Counts VI and VII, claiming unjust enrichment and unfair competition, will also be dismissed. Breskin's request to dismiss the claims against her will only be granted as to the misappropriation claims.

In Counts I and II, IQVIA brings claims for misappropriation of trade secrets under the federal Defend Trade Secrets Act (the "DTSA"), 18 U.S.C. § 1836, *et seq.*, and the Pennsylvania Uniform Trade Secrets Act (the "PUTSA"), 12 Pa. Cons. Stat. § 5301, *et seq.*, against both

6

Defendants. "The DTSA and the PUTSA are substantially similar" and contain "almost identical" definitions of the term "trade secret." *Mallet & Co. Inc. v. Lacayo*, 16 F.4th 364, 381 n.19 (3d Cir. 2021). Accordingly, the Court will apply the same analysis to IQVIA's claims under both laws. *See id.* ("Thus, although our discussion focuses on the DTSA, we conclude that the same analysis applies to [Plaintiff's] claims under the PUTSA and the same outcome results."). Because IQVIA has failed to sufficiently identify the information it claims as trade secrets, the Court cannot assess if a trade secret exists, and these claims will be dismissed with leave to amend.

To bring a claim for misappropriation of trade secrets under the DTSA, a plaintiff must show "(1) the existence of a trade secret . . . (2) that 'is related to a product or service used in, or intended for use in, interstate or foreign commerce[,]' and (3) the misappropriation of that trade secret[.]" *Oakwood Labs.*, 999 F.3d at 905 (second alteration in original) (citations omitted). Slipstream challenges IQVIA's claims under the first and third elements, arguing IQVIA did not sufficiently identify the alleged trade secrets nor take reasonable measures to protect those trade secrets, and has not plausibly pled misappropriation by Slipstream. Def. Slipstream's Br. Supp. Mot. Dismiss 5-6, ECF No. 27-2.

Under the DTSA, a trade secret is "defined generally as information with independent economic value that the owner has taken reasonable measures to keep secret[.]" *Oakwood Labs.*, 999 F.3d at 905 (citing 18 U.S.C. § 1839(3)). As a threshold matter, the plaintiff "must sufficiently identify the information it claims as a trade secret and allege facts supporting the assertion that the information is indeed protectable as such." *Id.* (citing 18 U.S.C. §§ 1836(b), 1839(3)). Evaluating the existence of a trade secret "is a fact-specific question to be decided on a case-by-case basis." *Id.* at 906 (internal quotation marks and citation omitted). The Court must consider the facts of IQVIA's claim, as well as "the degree of specificity necessary in light of the particular industry-

based context and the stage of litigation[.]" *Mallet*, 16 F.4th at 382 n.22. At the motion to dismiss stage:

> information alleged to be a misappropriated trade secret must be identified with enough specificity to place a defendant on notice of the bases for the claim being made against it. But a plaintiff need not spell out the details of the trade secret to avoid dismissal. Rather, the subject matter of the trade secret must be described with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies.

*Oakwood Labs.*, 999 F.3d at 906 (internal quotation marks and citations omitted). Further precision is unnecessary because "only discovery will reveal exactly what the defendants are up to." *Id.* at 907.

Two groups of documents are at issue herein, and neither is described with enough specificity to survive the motion to dismiss. First, prior to her final day of employment with IQVIA, Breskin downloaded nearly 10,000 files to a two-terabyte hard drive, emailed an unspecified number of files to her personal email account, and downloaded an additional, unspecified number of files to a second hard drive. Compl. ¶¶ 89, 95, 105, ECF No. 1. Though the Complaint describes the different types of confidential and proprietary information found on the hard drives, the descriptions do not distinguish between information claimed to be trade secrets and information simply claimed to be confidential. *Id.* ¶¶ 95, 105. The Court acknowledges the difficulty in identifying the alleged trade secrets given the volume of documents at issue, but IQVIA must still distinguish between these two groups of information. *See, e.g.*, *Mallett*, 16 F.4th at 382 ("While some information falling within those categories may very well include trade secrets, there is a fair probability that many of the categories – and perhaps all of them – also include information that does not qualify for trade secret protection."). In addition to this first group of documents, Breskin later accessed nine documents through Smartsheet: "three items

which included client-specific information that IQVIA used on client projects and six items that were developed by IQVIA and used across its SDA [Solutions Delivery and Assurance] business on various projects." Compl. ¶ 78, ECF No. 1. The Court cannot assess if a trade secret exists based on these threadbare descriptions. Accordingly, Slipstream's motion to dismiss IQVIA's misappropriation claims will be granted based on the Complaint's failure to identify the alleged trade secrets.[3]

---

[3] In addition to challenging IQVIA's identification of its trade secrets, Slipstream argues IQVIA should be precluded from bringing these claims because it did not disable Breskin's login credentials. Def. Slipstream's Reply Br. Supp. Mot. Dismiss 2, ECF No. 30. "[A] complaint sufficiently alleges 'reasonable measures' to maintain secrecy of a trade secret where the facts alleged support an inference that access was limited such that it would be difficult to acquire such trade secrets." *Houser v. Feldman*, 569 F. Supp. 3d 216, 230 (E.D. Pa. 2021). Moreover, "[c]ourts in this circuit have generally only dismissed DTSA claims on this ground where there are plain allegations that the owner made its own trade secrets public." *Id.* at 230 n.7. "Reasonable" does not mean "perfect," and at least two other courts have declined to cut off trade secrets protection for companies which failed to immediately disable login credentials. *See Ziegler Auto Grp. II, Inc. v. Chavez*, No. 19-cv-02748, 2020 WL 231087, at *4 (N.D. Ill. Jan. 15, 2020); *see also Westrock Co. & Victory Packaging, LP v. Dillon*, No. 21-CV-05388, 2021 WL 6064038, at *12.

As a third point, Slipstream argues IQVIA has not plausibly pled misappropriation by Slipstream. Def. Slipstream's Br. Supp. Mot. Dismiss 5-6, ECF No. 27-2. "[T]here are three ways to establish misappropriation . . . improper acquisition, disclosure, or use of a trade secret without consent." *Oakwood Labs.*, 999 F.3d at 907-08 (citing 18 U.S.C. § 1839(5)). "The implication of use, especially at the pleading stage, can flow from circumstantial evidence alone." *Id.* at 910. "The question . . . is simply whether [the plaintiff] provided allegations of misappropriation sufficient to raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true[.]" *Id.* at 913 (second alteration in original) (internal quotation marks and citation omitted). And because "the requisite factual information is peculiarly within the defendant's knowledge or control[,]" IQVIA may provide these allegations based upon information and belief "so long as there are no *boilerplate and conclusory allegations* and *[p]laintiffs . . . accompany their legal theory with factual allegations that make their theoretically viable claim plausible.*" *McDermott v. Clondalkin Grp., Inc.*, 649 F. App'x 263, 267-68 (3d Cir. 2016) (internal quotation marks and citations omitted) (emphasis in original).

Finally, the parties dispute whether misappropriation may be established under a vicarious liability theory. Most federal courts to consider this question held vicarious liability is available in misappropriation of trade secrets claims, and the Court sees no reason to diverge from this case law. *See Peloton Interactive, Inc. v. iFIT Inc.*, Civ. No. 20-1535-RGA, 2022 WL 1523112, at *2 n.1 (D. Del. May 13, 2022) ("While the Third Circuit has not yet addressed this issue, many federal

Turning to Count V, which alleges tortious interference with contractual relationships, IQVIA claims Slipstream induced, aided and abetted, and encouraged Breskin to violate her NDA and NIA with IQVIA. Compl. ¶¶ 174-76, ECF No. 1. To state a claim for tortious interference in Pennsylvania, a plaintiff must allege facts showing:

> (1) the existence of a contractual . . . relationship between the plaintiff and a third party; (2) purposeful action by the defendant, specifically intended to harm an existing relationship . . . (3) the absence of privilege or justification on the part of the defendant; (4) legal damage to the plaintiff as a result of the defendant's conduct[.]

*Acumed LLC v. Advanced Surgical Servs., Inc.*, 561 F.3d 199, 212 (3d Cir. 2009). Slipstream challenges this claim under the second element, arguing IQVIA has not established specific intent to harm on the part of Slipstream. Def. Slipstream's Br. Supp. Mot. Dismiss 7, ECF No. 27-2. It also argues any such allegations are not sufficient evidence to state a claim because they are based on information and belief. *Id.* at 7-8.

The Court agrees with Slipstream's assessment. IQVIA has established the first element of this claim: Breskin signed an NDA and NIA, creating a contractual relationship. Compl. ¶¶ 49, 56, ECF No. 1. IQVIA has also established, at minimum, that its documents were deleted from Breskin's Slipstream laptop in contravention of an NDA provision requiring return of material to IQVIA. Pl.'s Br. Opp. Def. Slipstream's Mot. Dismiss 7, ECF No. 29.

IQVIA has not, however, shown this deletion was specifically intended to harm it. As stated *supra* note 3, a plaintiff may plead based upon information and belief, "so long as there are no *boilerplate and conclusory allegations* and *[p]laintiffs . . . accompany their legal theory with*

---

district courts have held that the DTSA allows for respondeat superior liability." (citations omitted)); *see also Advanced Fluid Sys., Inc. v. Huber*, 295 F. Supp. 3d 467, 486 (M.D. Pa. 2018) ("Pennsylvania law recognizes *respondeat superior* liability . . . . We join the majority of federal and state courts and hold that PUTSA authorizes vicarious trade secret liability.").

10

*factual allegations that make their theoretically viable claim plausible.*" *McDermott*, 649 F. App'x at 268. IQVIA's Complaint is devoid of any facts which plausibly suggest Slipstream intended to harm IQVIA. Rather, the facts suggest the opposite. When Breskin notified Slipstream of her actions, the company gave her a verbal and written warning, and required her to take courses on intellectual property rights. Verified Statement Erica Breskin ¶¶ 8-9, ECF No. 1-1 at 9. These actions belie IQVIA's allegations of intent to harm, leaving it to rely on the type of conclusory allegations, unsupported by any factual details, that cannot support a claim. *See* Compl. ¶¶ 176, 178, 180, ECF No. 1. Accordingly, IQVIA's tortious interference claim will be dismissed.

In Count VI, IQVIA brings a claim for unjust enrichment against Breskin and Slipstream, arguing the use of IQVIA's information will "allow[] [Slipstream] to avoid developing [its] own confidential and proprietary information." Compl. ¶ 182, ECF No. 1. To prove unjust enrichment, a plaintiff must show "(1) benefits conferred on defendant by plaintiff; (2) appreciation of such benefits by defendant; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value[.]" *Hollenshead v. New Penn Fin., LLC*, 447 F. Supp. 3d 283, 292 (E.D. P.a. 2020). A plaintiff can plead unjust enrichment as a companion to a tort claim where the "unjust enrichment claim . . . rise[s] or fall[s] with the underlying claim."[4] *Whitaker v. Herr Foods, Inc.*, 198 F. Supp. 3d 476,

---

[4] Pennsylvania recognizes two theories of unjust enrichment: a quasi-contract theory and a tort theory. *Whitaker*, 198 F. Supp. 3d at 492. The quasi-contract theory is not applicable here because IQVIA does not allege the existence of a quasi, unconsummated, or void contract with Slipstream. Def. Slipstream's Br. Supp. Mot. Dismiss 9, ECF No. 27-2.

IQVIA also notes Pennsylvania has adopted the Restatement of Restitution to determine whether unjust enrichment applies. *Mifflinburg Tel., Inc. v. Criswell*, 277 F. Supp. 3d 750, 802 (M.D. Pa. 2017) (citing *D.A. Hill Co. v. Clevetrust Realty Invs.*, 573 A.2d 1005, 1009 (Pa. 1990)). The Restatement provides that unjust enrichment can occur through conversion, interference with a trade secret, or through a fiduciary or confidential relation. Restatement (Third) of Restitution and Unjust Enrichment §§ 40, 42–43 (Am. L. Inst. 2011). The Restatement, however, cannot rescue

493 (E.D. Pa. 2016). Because IQVIA has failed to state a claim for misappropriation of trade secrets, tortious interference, or unfair competition (as discussed *infra*), there are no underlying torts and the unjust enrichment claim necessarily fails.

Similarly, the common law tort of unfair competition requires evidence of the following: "trademark, trade name, and patent rights infringement, misrepresentation, tortious interference with contract, improper inducement of another's employees, and unlawful use of confidential information." *Schuylkill Valley Sports, Inc. v. Corp. Images Co.*, No. 5:20-cv-02332, 2020 WL 3167636, at *9 (E.D. Pa. Jun. 15, 2020) (citation omitted). As previously stated, IQVIA has not sufficiently pled a claim for misappropriation of trade secrets or tortious interference. To the extent this claim is based on Slipstream's unlawful use of confidential information, IQVIA has not pled any facts to support such allegations, and Breskin's Verified Statement expressly disclaims use. ¶¶ 13-15, ECF No. 1-1 at 9-10. Thus, IQVIA's claim for unfair competition will be dismissed.

In sum, the misappropriation claims will be dismissed because IQVIA did not identify the alleged trade secrets with enough specificity for the Court to determine their existence. The tortious interference claim will be dismissed because IQVIA has failed to show an intent to harm on the part of Slipstream. Finally, the unjust enrichment and unfair competition claims will be dismissed because there is no underlying tort to support these claims with the dismissal of the prior two. Accordingly, all claims against Slipstream will be dismissed from the case.

In addition to Slipstream's motion to dismiss, Breskin filed a joinder in support of the motion, claiming Slipstream's arguments "are fully and completely applicable" to her. Def. Breskin's Joinder Supp. Def. Slipstream's Mot. Dismiss 2, ECF No. 28. Her joinder will be granted

---

IQVIA's unjust enrichment claim at this stage, since IQVIA has not pled misappropriation of trade secrets.

in part and denied in part as follows. Because IQVIA failed to adequately plead the existence of trade secrets, the Court will dismiss IQVIA's misappropriation claims against Breskin. However, the remaining claims against her (for unjust enrichment, unfair competition, breach of contract, and violation of the Computer Fraud and Abuse Act) are substantiated with significantly more factual allegations than the claims against Slipstream. IQVIA has shown Breskin downloaded thousands of documents in violation of her NDA and NIA. Even absent a successful trade secrets misappropriation claim, Breskin's actions may support a claim for unfair competition based upon unlawful use of confidential information. And if IQVIA's unfair competition claim against Breskin survives, then it provides a tort to support the unjust enrichment claim. Therefore, Breskin's joinder will be denied as to the unjust enrichment and unfair competition claims.

One final issue remains. Slipstream asks the Court to deny IQVIA leave to amend, arguing there is evidence of bad faith and futility. Def. Slipstream's Br. Supp. Mot. Dismiss 10, ECF No. 27-2. Under Federal Rule of Civil Procedure 15(a)(2), a court should "freely" grant leave to amend "when justice so requires." The decision to grant leave is within the discretion of the court. *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). But a district court may deny leave to amend when there is undue delay, bad faith, dilatory motive, futility, or prejudice. *Id.* Nevertheless, the Third Circuit has "expressed a preference for allowance of the amendment, so long as the opposing party is not prejudiced[.]" *DLJ Mortg. Cap., Inc. v. Sheridan*, 975 F.3d 358, 369 (3d Cir. 2020). Slipstream has not alleged amendment would prejudice it, and the Court is not convinced by its futility or bad faith arguments.[5] As such, IQVIA will be granted leave to amend its Complaint.

---

[5] "'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted." *Shane*, 213 F.3d at 115. Contrary to Slipstream's arguments, it is plausible that IQVIA will be able to identify its trade secrets with more specificity, and IQVIA has already shown

13

**CONCLUSION**

Slipstream's motion to dismiss Counts I (misappropriation of trade secrets under the DTSA), II, (misappropriation of trade secrets under the PUTSA), V (tortious interference with contractual relationships), VI (unjust enrichment), and VII (unfair competition) will be granted. These claims against Slipstream will be dismissed without prejudice, and the claims against Breskin in Counts I and II will also be dismissed without prejudice. The Court will grant leave to amend. The remainder of the claims against Breskin in Counts III (violation of the Computer Fraud and Abuse Act), IV (breach of contract), VI (unjust enrichment), and VII (unfair competition) remain.

An appropriate Order follows.

BY THE COURT:

 /s/ Juan R. Sánchez
Juan R. Sánchez, C.J.

---

documents ended up on Slipstream's systems. Thus, it is far from clear that amendment of the trade secrets claims would be futile. And if IQVIA can plead trade secrets misappropriation, then it can also plead unjust enrichment and unfair competition claims against Slipstream.

As to bad faith, this factor usually applies to considerations of a plaintiff's motives in changing the theory of a case or adding new claims. *See, e.g.*, *Adams v. Gould, Inc.*, 739 F.2d 858, 868 (3d Cir. 1984); *see also Green v. Dept. of Corr.,* 393 F. App'x 20, 23 (3d Cir. 2010). Slipstream's bad faith argument, by contrast, is based on IQVIA's motives in bringing the case. Slipstream argues IQVIA seeks to "bully a potential future competitor[.]" Def. Slipstream's Br. Supp. Mot. Dismiss 1, ECF No. 27-2. At the risk of stating the obvious, IQVIA is not required to take Breskin at her word, especially in light of the inconsistencies between the evidence and her statement. Nor is it required to take Slipstream at its word.